Case 13-3892, S. L. et al. v. Pierce Township Bd of Trustees et al. Oral argument, 15 minutes per side. Mr. Kirtman for the appellants. You may proceed. May it please the court, Kurt Hartman on behalf of the appellants. Your Honor, I've reserved three and a half minutes for rebuttal. May it please the court, this appeal involves a de novo review of the district court's granting of summary judgment to both the appellees, Sean Bartley and Thomas Del Gran. At the outset, I believe that we do not believe that the appellees demonstrated their initial burden of demonstrating entitlement to summary judgment, but even if so, we believe that the record below clearly established the existence of a genuine dispute of material fact and that they were not entitled to judgment as a matter of law. With respect to my arguments, I'm going to try to bifurcate them between the issues relative to Officer Bartley and then conclude with the arguments relative to Superintendent Del Gran. The issues with respect to Officer Bartley I think arise from a misunderstanding or mischaracterization below as to what the legal claim was against him. This is a simple Fourth Amendment claim, and it goes to the question of whether or not there was probable cause to seize in the parlance of the Fourth Amendment S.L. following his initial arrest by an Officer Homer with the Pierce Township Police Department. What is your claim as to what he failed to do? Was it because he failed to administer the oath to the arresting officer or because he failed to make a separate probable cause determination when he was brought in or what? The issue in terms of the oath does not go that making the oath makes or breaks the case. The existence of an affidavit establishing facts to demonstrate that A.L. Stahel actually committed a crime would support a finding of probable cause. In this case, Officer Bartley did not have an affidavit setting forth any facts by which probable cause should be found, and I don't believe in terms of making this independent determination. The simple question is, was there probable cause at the time of the seizure by Bartley? That would be against the arresting officer, right? The Fourth Amendment applies against all state actors, and that's why I think part of the problem is, yes, the arresting officer has to have probable cause to arrest, and the prior panel of this court determined that there was a genuine issue of fact as to whether or not the initial arresting officer had probable cause. If the original arresting officer had probable cause, then I would believe Bartley would be fined because there would have existed probable cause to arrest him. Are you arguing that there are two discrete events or one continuing event? When the officer made the arrest, did that constitute the seizure, and is this just what continued on to and was attributed to Bartley, or were there two? There were two separate seizures. When the original officer arrests S.L. That's seizure one. That's a seizure. Clearly in the parlance of the Fourth Amendment, it's either a consensual encounter, it's a Terry stop, or it's an arrest. You said there are two seizures. There are two seizures. And the second seizure? It was conducted by Bartley operating under color of state law when he took physical custody and control over S.L. But if that person was already seized and already in custody, already arrested? Correct. He continues the seizure. It's a continuation of the seizure, but the question is if that original seizure had probable cause, then I think Bartley is safe. What's your best case authority to support what I gather is your position, that Bartley had an independent obligation to assess probable cause? Again, I want to clarify. I think the language isn't that he had to actually assess it. The question is whether or not there existed probable cause. How would he know if he didn't assess it? I think one, he basically inherits. I kind of go to the collective knowledge doctrine, where you have multiple officers involved, each having some facts, none independently being probable cause, but the courts have said the collective knowledge of officers can be used to establish probable cause. So in the collective knowledge doctrine, the individual officer does not necessarily have to possess probable cause, but other officers involved in the investigation and the process, taken as a collective together, can establish probable cause. Well, let's go at this from another angle. What is it specifically that you say that Officer Bartley should have done in order to make sure that there was probable cause? I believe that if Officer Bartley had the complaint slash affidavit that had some facts in it, other than a legal conclusion, if you look at the complaint that he filed, it was simply a parroting of the state statute for aggravated arson. If he had some facts there, which a reasonable observer might say, yeah, that constitutes aggravated arson, and that affidavit was executed under oath, not simply witnessing, but under oath, then I think Officer Bartley could have it. In theory, if you think about it, the arresting officer could lack probable cause, but if he presents certain facts to Bartley and says, yeah, those facts do rise to probable cause, even if it's false, even if it's misleading, then the initial officer, I think, can still be held liable, but then Bartley would be in a position to say, I had sufficient facts to say there was probable cause when I seized, because he doesn't dispute, I seized him when he was turned over custody to him. At his deposition, the question was simply, what facts did you possess when you took custody? He knew the officer had arrested him, and here he is. That's all the facts he had. He had no affidavit and didn't even develop subsequently. I could say he doesn't at that very moment. If part of the intake process, he developed an affidavit that had some facts. Here are the affidavits. Does the intake clerk, though, have the ability to refuse to process someone in when an officer presents them as a consequence of an arrest? In order to comply with the Constitution, I say yes. The clerk has that obligation?  Intake clerk. He was more than a clerk. He was actually, in a sense, a correctional officer taking physical custody and control. He was not simply processing paperwork. To me, that's more the clerk aspect. Do you mean to tell us that if the first officer had filled out this paper, which was sort of like an affidavit but wasn't sworn to, and turned him over to a second officer out in the field and said, you take him over to the detention center, the second officer had an obligation to find out that there was probable cause also? If that second officer took him and there was probable cause lacking, that probable officer would also be liable. If there was collective knowledge, if the arresting officer presents evidence and facts to that second officer, that rises to the level. Even if it's false, then I think that second officer does have qualified immunity. The first officer may not. Okay. So can you point to any case in any court where the booking officer or the holding facility was held liable for failing to verify that the arresting officer had probable cause for the arrest? No, I cannot. I've searched for that, but I think the clear underlying proposition is the Fourth Amendment applies to all state officers, not just law enforcement officers. Okay. Jumping ahead a little bit then, though, if there isn't any case law out there that says that a booking officer, or in this case an officer in a juvenile detention facility who processes a youngster in, if there isn't any case law out there that says that there is an obligation to ensure that probable cause was there for the arrest, why wouldn't we say, well, we're not going to decide exactly whether there was a constitutional violation, but whatever it was, this is not clearly enough established that the officer is not entitled to qualified immunity. Excellent question, Chief Judge. I think that issue is not raised or briefed below or asserted below, but I think the issue is a question, I would argue, that the premise that the Fourth Amendment applies to all government actors is clearly established. The Fourth Amendment, when it rises to the level of a custodial arrest, a seizure, that without a warrant or a court order, probable cause has to exist. I believe that clearly establishes law. I'll grant you that specific facts are not out there, but I don't think the Supreme Court and the qualified immunity jurisprudence has required a case on all points in terms of factual precision. Well, the next day your client went before a judge, and she didn't determine probable cause either, did she? Of course, she's got judicial immunity, but she didn't find it out, and she appointed a guardian ad litem and did a few other things, and your client didn't have a probable cause hearing for some period of time. That is correct, Your Honor, and that's all the case. The first panel actually declared that they may try to make that argument previously, and the previous panel said she made no such finding. And so any officer who brought your client from the detention center to the judge might be just as guilty of violating the Fourth Amendment also, right? In theory, yes. Because they don't make that determination. They don't make that determination. But the fact that the judge did order him continued detained, which even though she never made a probable cause finding, et cetera, that then justifies the continued detention following that hearing. She ordered him detained for seven days, never making a probable cause. She didn't make a probable cause. Correct, she didn't, but the court order protects. But what about the officer who brought the prisoner to the judge? Was he supposed to make a probable cause determination when the jail tells him to bring that prisoner over to the judge? No, because then he is acting to bring him to court, which I think we then get into a question of potential of judicial immunity. He's bringing him to court pursuant to a court order to appear. But there wasn't a court order before he brought him over there, right? It was just a question. It was the process by which they schedule a hearing, a probable cause hearing. So wasn't the facilities officer simply holding that individual until they could go to court and have this issue adjudicated or determined? He was holding him. He was seizing him in the parlance of the Fourth Amendment. Either the Fourth Amendment applies to all government actors or it doesn't. That's the issue with respect to Barclay. I would like to move on briefly if I can with my remaining time to just talk a little bit on Dell Grant in terms of the negligent supervision in the Eleventh Amendment. I think the Eleventh Amendment issue out there, they try to bootstrap a detention center into the concept of a common pleas court. The case law I think we really set forth that they clearly admit that the state is not financially liable, which this court has indicated and the Supreme Court has indicated is the first and most significant factor. But of the other factors we go to, we point out that the Attorney General of the State of Ohio said with respect to a common pleas court, not the detention center, but with respect to a common pleas court, it's not clear whether or not a common pleas court judge is or is not a state actor. And the juvenile court judge equated what was occurring at the juvenile detention center as being akin to a county jail. She didn't equate it to what the state does. She equated it to a county. So I think the summary judgment evidence clearly showed no basis for Eleventh Amendment immunity. In terms of the negligent supervision, I would point out they basically, the Ohio case of Strzok is the controlling precedent there, but they basically ignored the alternative of or, a claim wrong against the third party. And the Supreme Court of Ohio said or is a functional word indicating an alternative between different or unlike things. They want to treat whether or not for the negligent supervision, whether or not the underlying employee is personally liable as the same as whether or not that employee committed a claim wrong. They have to be something different, unlike things. See, my time is up. Thank you, Counselor. Thank you, Judge. May it please the Court. My name is Frank Scaldone, and I represent Thomas DelGrand and Officer Bartley. Our theory of the case centers around that an intake officer is not constitutionally required to conduct a second probable cause determination when another officer has already arrested, already seized the person being brought in. Officer Bartley cannot be liable for doing so. Without a constitutional violation in this case, all of the plaintiff's claims kind of fall in order. There is no constitutional violation by Bartley. Again, Bartley was not the one who arrested SL. And there was no law, there's no law that I'm aware of, and it's not surprising because it's kind of a unique, kind of a somewhat broad argument that would support the plaintiff's intention that everyone after the initial officer who doesn't do an independent probable cause determination could be held liable for a seizure claim. Again, I... Do you agree with the counsel that at the time Bartley took possession of the juvenile, that that constituted a second seizure? No. I mean, it's just he's really accepting, it's really, I guess, administratively he's bringing him in and doing the things that are required to do to process him. He's not out on the street seizing anybody. He's really... Otherwise the argument, I guess, would go that the next person that you travel him down to would be in the same type of situation. It just doesn't, I mean, it just doesn't make sense to me how that would play out. And apparently the courts... There is, you mentioned, is there any court supporting that? There really is. I mean, again, it's such a unique, kind of such a broad argument. The only case that I was able to lay hands on was a district court case in the Northern District Buster v. Cleveland, 2010 Westlaw 330261, and that's in the briefing. But there apparently that same argument was made and disregarded as a matter of law. Well, your client Bartley had an obligation to put the first officer under oath, and he didn't do that, right? That's correct. And so was there enough written on the affidavit, so-called affidavit, that would have provided probable cause? I believe the officers, you know, the complaint was pretty sparse, but the information... It said something about attempted arson or something like that. Yeah, burning. The accompanying documents and the information that Bartley received, I believe, did have some information about that he was burning some sort of wood, and it made the statement that he didn't care if something caught on fire in the house. So I think that there probably was, maybe not specifically in that complaint, because I think it was pretty... I think there was enough to establish probable cause, basically. This conclusory is what your opponent said. Is that enough to provide probable cause? Like you said, if he just said this person tried to shoot somebody else or this person had a gun, is that enough? I think it's enough in this case with the statements made by Officer Homer as well. Generally, I appreciate your question that, you know, is a pure blanket conclusory statement enough? And I'm not sure how the courts have come out on the level of specificity needed in a criminal complaint, but it seems to me that SL had already been seized in this circumstance by the officer. I don't know how, I mean, how that Officer Bartley would turn him away based on the statements and the initial seizure by Officer Homer. I just can't get my mind around how that would play out. With regard to, because the claim against Supervisor DelGrant is an official capacity claim, and that's the only claim that is left, that, of course, it's well-established law that for there to be a Monell claim, official capacity claim, there has to be an underlying constitutional violation. That has not been established here, so that claim goes by the wayside. Additionally, the final claim is the state law negligent supervision claim. And that claim, too, fails because there's been no demonstration of a legal violation, a legally cognizable claim here, and therefore there can be no negligent supervision claim. And I know the plaintiff is making an argument that, well, it can be a claimed wrong under Ohio law. I don't think that's a correct statement of Ohio law. You need a legally cognizable claim to underline a negligent supervision claim. And I think that the case of Strzok v. Presnell, which is featured prominently in our briefing, expressly holds that without a legally viable claim, you cannot maintain a negligent supervision claim. Unless the court has any additional questions, I mean, that is our basic theory of the case. I think that the questions are right on point with at least the way that we're viewing the case. If there's no other questions. Are you defending on the fact that there was not a legally cognizable claim against Bartley, and therefore there couldn't be anything against Del Grande, or are you saying that you have 11th Amendment immunity here? We also have made the alternative argument. We're saying there's no, our primary position in this case, there's no constitutional violation, there's no legally cognizable claim. We've also made the argument in the alternative of 11th Amendment immunity. And we've also made the argument on behalf of Bartley of quasi-judicial immunity based on the fact that he was operating under an order of the juvenile court. Thank you very much for your time. I appreciate it. Counsel? Rebuttal? To address first with respect to Judge Donald's question, when he denies that there was a seizure occurring, the case law is clear there's three types of interactions between individuals and governments. It's an encounter, a Terry stop, or a seizure. It's got to fall in one of those three. He basically disclaims any of those three, saying the Constitution does not even apply to Bartley as a state actor. With respect to the affidavit, Judge Seiler, the affidavit simply parroted the state statute. It said nothing about, all it said is, by fire caused of substantial risk of harm to others. That's all this affidavit complaint that was unsworn set. Set forth no facts. That's basically the statute for aggravated arson. Well, I would bet that most of those claims where they make an arrest out on the streets are going to look sort of like that. So and so shot. Maybe, but... So and so exceeded the speed limit here or something like that. Yeah, that can... I missed you on the last part, sir. That the defendant here exceeded the speed limit in this area. But it would also say he was going so many miles per hour in a certain zone and area. Well, that would be better, but I don't know whether that's required. Having gotten a few speeding tickets, they usually say it was by radar and how it was all assessed and determined. So I think those type of situations do put some meat on the bones. Here there was absolutely no meat on the bones in terms of this complaint affidavit. With respect to the negligence supervision claim, again, I think it's important to recognize it's not that, which is a state law claim. It's not based upon the alleged constitutional violation, but it's based upon the underlying claim of a false arrest or false imprisonment against Barley. Again, it goes to probable cause, but by the court's questioning, there may be a distinction between the 1983 claim and the state law claim. I would agree there has to be a legally cognizable claim in order to apply with Strzok, and that legally cognizable claim is false arrest, false imprisonment. The Strzok case, the underlying claim against the employee was alienation of affections, which the state of Ohio does not recognize as a legally cognizable claim. The state of Ohio recognized arson, right? Correct. But the claim against DelGran, the underlying claim with respect to Barley, is legally cognizable, false arrest, false imprisonment. So I think that is the distinction. Otherwise, he basically wants to merge the employee legally liable with the same thing as did he commit a claim wrong. The court in Strzok uses it in the distinction. The Supreme Court has said when you use the word or, it means different or unlike things. Well, to state a claim against DelGrande for negligent supervision, I'm not looking at a state law claim now, I'm looking at your claim that there was a constitutional violation for which DelGrande is responsible. Wouldn't you have to show something more than someone under DelGrande's supervision screwed up? Correct. I think there's got to be a demonstration of wanton and willful misconduct. That's already been addressed by the previous panel. That's law of the case in the previous appeal that DelGrande. They didn't find that he had engaged in wanton misconduct. The court in that decision, Judge Kethledge, said, you know, a jury could therefore find that by failing to train Bartley about a specific detention requirement, DelGrande exercised no care with regard to supervising his staff or disregarded the risk of illegally detaining juveniles. And it talked about it in the sense of wanton or willful conduct, that there was enough evidence in the record to create that as an issue of fact to go back to trial. That's law of the case based upon the previous interlocutory appeal that DelGrande took. One final thing I would just point out. If there is an Eleventh Amendment issue in terms of state law claims, the remedy is dismissal without prejudice. It's not a prejudicial determination. Thank you. Thank you, counsel. The case will be submitted and the clerk may call the next case.